No. 23-40650

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

CHAMBER OF COMMERCE OF THE UNITED STATES OF
AMERICA; LONGVIEW CHAMBER OF COMMERCE;
AMERICAN BANKERS ASSOCIATION; CONSUMER BANKERS
ASSOCIATION; INDEPENDENT BANKERS ASSOCIATION OF
TEXAS; TEXAS ASSOCIATION OF BUSINESS; TEXAS
BANKERS ASSOCIATION,

*Plaintiffs-Appellees,*

*v.*

CONSUMER FINANCIAL PROTECTION BUREAU; ROHIT CHOPRA,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Texas
Case No. 1:22-cv-00381-JCB

**REPLY BRIEF OF APPELLANTS**

> Seth Frotman
> *General Counsel*
> Steven Y. Bressler
> *Deputy General Counsel*
> Christopher Deal
> *Assistant General*
> *Counsel*
> Justin M. Sandberg
> Ryan Cooper

*Senior Counsel*
Consumer Financial Protection
Bureau
1700 G Street NW
Washington, DC 20552
Justin.Sandberg@cfpb.gov
Ryan.Cooper@cfpb.gov
(202) 450-8786 (Sandberg)
(202) 702-7541 (Cooper)

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................. 5

I.   Threshold Issues Require Dismissal. .............................................. 5

    A.   Plaintiffs Lack Article III Standing. ...................................... 5

    B.   Venue Is Improper. ................................................................ 14

    C.   Plaintiffs Lack Standing to Seek the Injunction Issued by the
        District Court. ........................................................................ 19

II.  If Plaintiffs Meet Threshold Justiciability Requirements, Then
    Vacatur on Procedural Grounds Would Be Appropriate. ................ 21

III. The Bureau Has the Statutory Authority to Treat Unfair and
    Discriminatory Acts and Practices as Unfair ................................. 22

IV.  If Any Relief Were Appropriate, Vacatur Would Suffice, and, in Any
    Case, the Injunctive and Declaratory Relief Are Overbroad ........... 31

CONCLUSION ....................................................................................... 34

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*Advoc. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*,
    41 F.4th 586 (D.C. Cir. 2022) ........................................................ 6, 7, 11

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*,
    103 F.4th 765 (11th Cir. 2024) ............................................................ 6

*Ambraco, Inc. v. Bossclip, B.V.*,
    570 F.3d 233 (5th Cir. 2009) .............................................................. 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 18

*Ass'n of Am. Physicians & Surgeons v. FDA*,
    13 F.4th 531 (6th Cir. 2021) .............................................................. 33

*Baris v. Sulpicio Lines, Inc.*,
    932 F.2d 1540 (5th Cir. 1991) ........................................................... 12

*Career Colleges & Sch. of Texas v. U.S. Dep't of Educ.*,
    98 F.4th 220 (5th Cir. 2024) .............................................................. 14

*CFPB v. Cmty. Fin. Serv. Ass'n of Am., Ltd.*,
    601 U.S. 416 (2024) ............................................................................. 4

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................ 19, 20

*Crane v. Napolitano*,
    920 F. Supp. 2d 724 (N.D. Tex. 2013) ............................................... 17

*Dayton Area Chamber of Com. v. Becerra*,
    2024 WL 3741510 (S.D. Ohio Aug. 8, 2024) ...................................... 16

*Do No Harm v. Pfizer, Inc.*,
    96 F.4th 106 (2d Cir. 2024) ............................................................. 7, 8

*Ensley v. Cody Res., Inc.*,
    171 F.3d 315 (5th Cir. 1999) ............................................................. 12

*FDA v. All. for Hippocratic,*
   *Med.*, 602 U.S. 367 (2024) ...................................................... 9

*FTC v. Sperry & Hutchinson Co.*,
   405 U.S. 233 (1972) ............................................................. 27

*FTC v. Wyndham Worldwide Corp.*,
   799 F.3d 236 (3d Cir. 2015)................................................. 24

*Landor v. Louisiana Dep't of Corr. & Pub. Safety*,
   82 F.4th 337 (5th Cir. 2023)................................................ 31

*Lewis v. Casey*,
   518 U.S. 343 (1996) .............................................................. 7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ......................................................... 9, 17

*M.M.V. v. Garland*,
   1 F.4th 1100 (D.C. Cir. 2021) ............................................. 20

*Mayfield v. United States Dep't of Labor*,
   117 F.4th 611 (5th Cir. 2024) ....................................... *passim*

*Miller v. Albright*,
   523 U.S. 420 (1998) ............................................................ 15

*Missouri v. U.S. Dep't of Educ.*,
   2024 WL 4374124 (S.D. Ga. Oct. 2, 2024) ........................... 15

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ............................................................ 32

*Murthy v. Missouri*,
   144 S. Ct. 1972 (2024) ........................................................ 20

*NAACP v. Alabama*,
   357 U.S. 449 (1958) .............................................................. 7

*Nat'l Council of La Raza v. Cegavske*,
   800 F.3d 1032 (9th Cir. 2015) .............................................. 9

*Neirbo Co. v. Bethlehem Shipbuilding Corp.,*
  308 U.S. 165 (1939) ............................................................... 16

*New York v. Wolf,*
  2021 WL 185190 (S.D.N.Y. Jan. 19, 2021) ........................... 32

*O'Shea v. Littleton,*
  414 U.S. 488 (1974) ............................................................... 20

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary,*
  268 U.S. 510 (1925) ............................................................... 33

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC,*
  2 F.4th 1002 (7th Cir. 2021) ................................................. 18

*R.J. Reynolds Vapor Co. v. FDA,*
  65 F.4th 182, 188 (5th Cir. 2023) ......................................... 16

*Reno v. Flores,*
  507 U.S. 292 (1993) ................................................... 2, 29, 30

*Rimini St., Inc. v. Oracle USA, Inc.,*
  586 U.S. 334 (2019) ............................................................... 26

*Rolls v. Packaging Corp. of Am. Inc.,*
  34 F.4th 431 (5th Cir. 2022) ................................................. 12

*Sch. Bd. of Broward Cnty., Fla. v. Dep't of Health, Ed. & Welfare,*
  525 F.2d 900 (5th Cir. 1976) ................................................. 11

*Sierra Club v. FDIC,*
  992 F.2d 545 (5th Cir. 1993) ................................................. 10

*Speech First, Inc. v. Cartwright,*
  32 F.4th 1110 (11th Cir. 2022) ............................................... 6

*Speech First, Inc. v. Fenves,*
  979 F.3d 319 (5th Cir. 2020) ........................................... 10, 11

*Speech First, Inc. v. Shrum,*
  92 F.4th 947 (10th Cir. 2024) ................................................. 6

iv

*Stowell v. Sec'y of Health & Hum. Servs.*,
  3 F.3d 539 (1st Cir. 1993) ................................................................. 27

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009) ................................................................. *passim*

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................. 20

*United States v. Craig*,
  861 F.2d 818 (5th Cir. 1988) ................................................................. 21

*United States v. L.A. Tucker Truck Lines, Inc.*,
  344 U.S. 33 (1952) ................................................................. 33

*United States v. Walker*,
  410 F.3d 754 (5th Cir. 2005) ................................................................. 10

*Walker v. S. Cent. Bell Tel. Co.*,
  904 F.2d 275 (5th Cir. 1990) ................................................................. 31

*Workman v. UPS*,
  234 F.3d 998 (7th Cir. 2000) ................................................................. 11

**Statutes**

12 U.S.C. § 5481(13) ................................................................. 25

12 U.S.C. § 5511(b) ................................................................. 24

12 U.S.C. § 5531(a), (b) ................................................................. 23

12 U.S.C. § 5531(c) ................................................................. 1, 26, 27

12 U.S.C. § 5531(c)(2) ................................................................. 2, 23

15 U.S.C. § 45(a) ................................................................. 28

49 U.S.C. § 41712(a) ................................................................. 28

**Rules**

Fed. R. Evid. 807(a)(2) ................................................................. 10

## Other Authorities

*Pseudonym*, Black's Law Dictionary (12th ed. 2024) ............................... 8

*Equitable*, Oxford English Dictionary,
   https://www.oed.com/view/Entry/63831 ........................................ 25, 26

Jeff Sovern, Is Discrimination Unfair? U of Maryland Legal Studies
   Research Paper No. 2024–02, Georgia St. Law Rev. (forthcoming
   2024),
   https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4712271 .......... 23

S. Rep. No. 63–597 (1914) ........................................................ 27

## <u>INTRODUCTION</u>

Plaintiffs—a bevy of business associations suing on behalf of unnamed members—seek to defend the district court's extraordinary holding that discriminatory acts and practices are implicitly excluded from Congress's grant of statutory authority to the Consumer Financial Protection Bureau to police "unfair" acts.  So, if a bank cancels a consumer's account arbitrarily, the conduct can be unfair.  But, if one of Plaintiffs' members cancels an account *because* the consumer is Christian or Jewish, then that conduct can never be unfair and the Bureau is barred from even investigating.  In other words, Plaintiffs believe Congress shielded discrimination—and, apparently, only discrimination—from the Bureau's unfairness authority, without actually saying so.

Remarkably, Plaintiffs do not base their argument on the terms of the Consumer Financial Protection Act's unfairness provision, 12 U.S.C. § 5531(c).  Instead, Plaintiffs canvass various unrelated statutory clauses seeking mouseholes in which to locate their surprising claim that Congress silently intended to exempt discrimination—and only discrimination—from the normal standard for unfairness.  But

Plaintiffs' approach requires rewriting the statue, not interpreting it. As just one example, Plaintiffs' position requires the unlikely conclusion that even though Congress expressly allowed the Bureau to consider public policy when determining whether an act or practice is unfair, § 5531(c)(2), Congress silently forbade the Bureau from considering the well-established public policy against invidious discrimination.

Without support in the statute's plain text, Plaintiffs seek refuge in the major questions doctrine. But they can't show, as they must in this facial pre-enforcement challenge, that there are no circumstances in which discriminatory conduct can be unfair consistent with the major questions doctrine and, by extension, the statute. *See, e.g., Reno v. Flores*, 507 U.S. 292, 301 (1993); *Mayfield v. United States Dep't of Labor*, 117 F.4th 611, 617 (5th Cir. 2024). Indeed, it is difficult to understand—and Plaintiffs do not make any real effort to explain—how it would pose a major question for the Bureau to conclude in the future that it is unfair for one of Plaintiffs' members to debank their consumers solely based on their race, sex, or religion.

The discussion thus far suffices to highlight the flaws in the district court's statutory authority holding. And though the holding

2

should be reversed, the Court need not—indeed, should not—reach it. Too many threshold obstacles stand in the way.

For starters, Plaintiffs cannot establish standing under Article III. First, notwithstanding the Supreme Court's direction in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), Plaintiffs secured a final judgment while refusing to name their ostensibly injured members. And even if Plaintiffs' approach of providing pseudonyms might be appropriate in some cases, the fleeting hearsay references in Plaintiffs' declarations to the particular members allegedly affected by the Bureau's Manual were wholly insufficient to permit the court to assure itself of its jurisdiction as Article III of the Constitution requires.

Plaintiffs also cannot establish that venue was proper in the Eastern District of Texas. After all, Plaintiffs do not dispute that their venue-creating Plaintiff, the Longview Chamber of Commerce, did not establish its constitutional standing at summary judgment. Plaintiffs trot out various theories for why the Longview Chamber's conceded lack of Article III standing doesn't matter, but none persuades.

Plaintiffs also cannot demonstrate that they have standing to seek relief for hypothetical agency action, or for uninjured associations or

3

members.  Contrary to their arguments, Article III limits (including the requirement for here-and-now injuries) should not bend to the perceived benefits of convenience or efficiency that an overly broad judgment may offer to uninjured association members.  These unharmed members may want an injunction squirreled away in their files on the off chance that one day the Bureau will investigate them for a kind of potentially unfair conduct—discrimination—that Plaintiffs claim they "all oppose," but desire does not equal entitlement.[1]

Finally, Plaintiffs offer no argument on remedy that upends what the Bureau said in its opening brief.  Reversal is warranted.[2]

---

[1] If the Court concludes that Plaintiffs have surmounted the obstacles to review on the merits, the Bureau does not oppose vacatur of the March 2022 updates to the Supervision and Examination Manual.  *See* § II below.

[2] Plaintiffs brief contains a footnote indicating they're open to "amend[ing]" or "reframe[ing]" their moribund constitutional claim.  Opp. at 10.  While they may be open to re-writing their complaint, they never affirmatively seek permission to amend it, *id.*, and they provide no basis to believe that an amendment would not be futile given *CFPB v. Community Financial Services Association of America, Ltd.*, 601 U.S. 416 (2024).

## ARGUMENT

### I.    Threshold Issues Require Dismissal.

#### A.    Plaintiffs Lack Article III Standing.

Plaintiffs refused to name their injured members and failed to submit competent evidence establishing that any particular member suffered an Article III injury.  The result, as in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), is that the Court cannot assure itself of constitutional standing.

##### 1.    Plaintiffs failed to *name* their injured members.

Plaintiffs argue (at 17) that *Summers* requires only that associations "identify[] specific members, not divulg[e] their true identities."  To be clear, even under that reading, most Plaintiffs still lack standing because they have not identified any injured member— not even by pseudonym.  Opening Br. at 19.  Plaintiffs do not defend the standing of several Plaintiffs, including the Longview Chamber, and concede that the district court erred in holding that all Plaintiffs have standing.

Of course, even the Plaintiffs who identify members by pseudonym lack standing because they refuse to "name" those members.  *Summers*, 555 U.S. at 498.  Plaintiffs contend that *Summers* allows pseudonyms

and that "the overwhelming majority of courts" agree. Op. at 30-31.
But the cases Plaintiffs cite were nearly all decided in the early stages
of the litigation. Undoubtedly, many courts have held that pseudonyms
are appropriate at the pleading or preliminary-injunction stages. And a
less stringent standard may be appropriate early in the litigation when
the "burden in establishing standing is lightened considerably." *Speech
First, Inc. v. Shrum*, 92 F.4th 947, 950 n.1 (10th Cir. 2024). But there is
little authority for the proposition that a plaintiff-association need not
name its injured members at final judgment. Indeed, Plaintiffs' main
case is *American Alliance for Equal Rights v. Fearless Fund
Management, LLC*, 103 F.4th 765 (11th Cir. 2024), but there the
Eleventh Circuit held that pseudonyms are sufficient on a preliminary-
injunction motion. That court assesses standing on a preliminary-
injunction motion using the same standard it would apply at the
pleading stage. *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110,
1119 (11th Cir. 2022).

Plaintiffs also rely (at 23) on *Advocates for Highway & Auto Safety
v. Federal Motor Carrier Safety Administration*, 41 F.4th 586 (D.C. Cir.
2022). That case is inapposite because standing was "apparent from the

administrative record." *Id.* at 593.  It makes sense that a court might relax the *Summers*-naming requirement where review of the record leaves "little question" that a member has been injured.  *Id.*  But when there is a question, *Summers* requires that an injured member be named. And the decision is not persuasive because its holding relies on cases that don't involve associational standing, were decided pre-*Summers,* or were decided at the pleading stage.  *Id.* at 594 & n.2.

Plaintiffs assert (at 20) that requiring them to name injured members would contradict "generations of precedent."  But they cite just a few cases, none of which contains any reasoning on point.  *See Lewis v. Casey*, 518 U.S. 343, 353 n.2 (1996) (unaddressed jurisdictional defects not precedential); *Do No Harm v. Pfizer, Inc.*, 96 F.4th 106, 118 (2d Cir. 2024) (distinguishing these cases).  And *NAACP v. Alabama,* 357 U.S. 449, 459 (1958) is particularly poor evidence of a tradition of allowing associations to litigate in secret because it is cited in *Summers* as reflecting a narrow exception to historical practice.  555 U.S. at 499.

At bottom, Plaintiffs' insistence that an association may litigate a case to final judgment without revealing whose interests are at stake is

contrary to the weight of authority. The Court should not endorse that reading of *Summers* for two reasons.

First, *Summers* plainly states that an association "must name" its injured members. 555 U.S. at 498. The Court "said what it meant and meant what it said." *Do No Harm*, 96 F.4th at 116. Plaintiffs contend (at 19) that a pseudonym is a "type of name." But a pseudonym is a "fictious" or false name. *Pseudonym*, Black's Law Dictionary (12th ed. 2024). It strains credulity to suggest that a naming requirement can be satisfied by providing a *false* name. That logic distorts the language and reasoning of *Summers* beyond recognition. Opening Br. at 20-21.

Second, allowing an association's members to hide behind pseudonyms undercuts the presumption of open access to judicial proceedings. *Id.* at 34-36. Plaintiffs claim (at 21 n.3) that presumption is "trumped" by "the right to associational privacy." But courts routinely balance these competing interests, and there is no reason a litigant should be able to invoke associational standing to avoid that balancing act altogether. That result would be "incongruous," *Do No Harm*, 96 F.4th at 117, and needlessly exacerbate existing "tension

8

between associational standing and other areas of the law," *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 402 (2024) (Thomas, J. concurring).

Finally, Plaintiffs assert (at 34) that they have satisfied *Summers* because the Consumer Bankers Association's membership list is publicly available.  That argument is inconsistent with their concession that an association must name "a specific member."  Opp. at 18.  And while Plaintiffs cite *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1039 (9th Cir. 2015), that case does not hold that an association can satisfy *Summers* simply by pointing to its membership rolls.  Even if it did, the motion-to-dismiss decision provides no guidance as to what is necessary at final judgment.

### 2. The Court cannot assure itself of Plaintiffs' standing based on the record before it.

At summary judgment, a court must assure itself of the plaintiffs' standing based on specific facts set forth in affidavits or other competent evidence.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Here, the district court was in no position to assure itself of standing, for three reasons.

First, in *Summers*, the Supreme Court held that "organizations' self-descriptions of their membership" are insufficient to establish

9

standing. 555 U.S. at 499. Nonetheless, Plaintiffs claim standing solely on the basis of hearsay declarations without providing any evidence from their members. Opening Br. at 24-27. Plaintiffs' arguments (at 27) that their declarations are properly considered at summary judgment miss the point. The declarations were legally insufficient to establish standing even if properly considered.

In any event, Plaintiffs' hearsay declarations were not properly considered. Plaintiffs' invocation (at 27) of the residual exception is baseless because that exception is reserved for "truly exceptional cases," *United States v. Walker*, 410 F.3d 754, 757 (5th Cir. 2005), and requires a showing that the hearsay "is more probative . . . than any other evidence that the proponent can obtain through reasonable efforts," Fed. R. Evid. 807(a)(2). Plaintiffs could have submitted declarations from their members but chose not to.

While Plaintiffs assert (at 26) that courts "rely on associations' testimony about their members all the time," none of their cases are on point. For instance, *Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) is a preliminary-injunction case, and hearsay is properly considered on a preliminary-injunction motion, *Sierra Club v. FDIC*,

992 F.2d 545, 551 (5th Cir. 1993). In *Highway Safety*, the court relied on the administrative record, 41 F.4th 586, which is not subject to the hearsay rule, *Sch. Bd. of Broward Cnty., Fla. v. Dep't of Health, Ed. & Welfare*, 525 F.2d 900, 906 (5th Cir. 1976). And the record contained "direct quotations from individual members affected," *Highway Safety*, 41 F.4th at 594, meaning the court did not rely on "the organization's self-description" of its members' injuries, *Summers*, 555 U.S. at 497. The other cases cited are also not on point because one was decided pre-*Summers* and the other was decided on a motion to dismiss.

Plaintiffs argue (at 25) that any objections to their standing evidence have been waived. But standing cannot be waived. *Summers* makes this clear: A court cannot accept an association's characterizations of its members' injuries—even if "no one denies them." *Summers*, 555 U.S. at 499. Plaintiffs' insistence that "factual disputes" are waivable is wrong in light of *Summers,* and it's telling that the only authority cited is a pre-*Summers* case. Even that case (which is not about standing) acknowledges that a party cannot waive arguments pertaining to the "inference of jurisdiction" drawn from the record. *Workman v. UPS*, 234 F.3d 998, 1000 (7th Cir. 2000).

11

Moreover, Plaintiffs find no support in their cited cases for their assertion that a defendant can waive the "evidentiary points" relevant to standing. In *Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 320 (5th Cir. 1999), this Court held that non-jurisdictional arguments involving prudential standing could be waived. In *Rolls v. Packaging Corp. of America Inc.*, 34 F.4th 431, 435 (5th Cir. 2022), this Court held that arguments about improper removal could be waived. But improper removal unlike other jurisdictional arguments "is waivable." *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1543-44 (5th Cir. 1991).

Second, the Court cannot assure itself of jurisdiction without knowing the names of Plaintiffs' members. Opening Br. at 33-34. Without names, the Bureau was denied the opportunity to rebut Plaintiffs' standing assertions. Contrary to Plaintiffs' claim (at 24), the Bureau *did* seek discovery once it was clear that Plaintiffs would not comply with the naming requirement, ROA.1809. While Plaintiffs assert the district court deemed the discovery request "insufficient under the rules," in fact the court ignored it altogether. And even had the Bureau waived discovery, the district court was still in no position

12

to assure itself of jurisdiction on the scant record before it, *see*

*Summers*, 555 U.S. at 499.

Third, Plaintiffs' declarations fail to prove the elements of

standing as to any of their members.  While those declarations include

vague assertions about compliance costs, they omit numerous facts

necessary to establish standing.  Opening Br. at 28-32.  Plaintiffs'

response (at 28) is to list various assertions from their declarations.

But none of those assertions answers the basic question of *why* any

particular member incurred particular costs.  And it is not clear that it

was because of the Manual Update.  It may be that these members were

attempting to root out discrimination, given their commitment to "the

eradication of discrimination from the marketplace," or that they were

concerned about actions by other regulators and private litigants.  *Id.* at

30-31.  The declarations don't say, and without more information the

Court cannot assure itself of jurisdiction, *see Summers*, 555 U.S. at 499

(noting obligation of court to confirm standing of association members).

Plaintiffs' argument (at 29) that standing "would be simple" had

the Bureau proceeded through notice-and-comment is based on a

misunderstanding of the Manual Update, which does not require

Plaintiffs to take or to refrain from taking any action. It tells

examiners what to look for when considering UDAAP issues. If the

Manual Update had imposed requirements on Plaintiffs' members, then

the standing calculus would be different. But it doesn't. So, to

demonstrate standing, Plaintiffs must submit evidence showing that a

member has suffered an injury traceable to the Manual Update.

Plaintiffs' claim that regulations "almost always" impose costs on

regulated entities is irrelevant for the same reason. The Manual

Update did not restrain Plaintiffs' members, so it is unclear whether it

imposed costs on them. The language Plaintiffs cite in *Career Colleges

& Schools of Texas v. U.S. Department of Education*, 98 F.4th 220, 238

(5th Cir. 2024) does not say otherwise. That case says that *if* a

regulated entity incurs compliance costs, those costs are irreparable. It

does not say that an entity automatically has standing if it dislikes a

direction an agency gives its staff.

### B.    Venue Is Improper.

Plaintiffs do not dispute that the Longview Chamber of Commerce

(the only Plaintiff residing in the Eastern District of Texas) failed to

establish standing at summary judgment. Even under their narrow

reading of *Summers*, an association still must identify "a *specific*
member." Opp. at 18. Plaintiffs make no attempt to argue that the
Longview Chamber met that burden, nor could they, because the
declaration it submitted makes no mention of any specific member.
ROA.272-79. Because it is undisputed that the Longview Chamber did
not establish its standing at summary judgment, the Eastern District of
Texas was not a proper venue. Plaintiffs attempt to avoid this
straightforward result by claiming variously that the venue-creating
plaintiff does not need to have standing, that the venue-creating
plaintiff's assertion of standing must only be non-frivolous, and that the
venue-creating plaintiff need not bother trying to demonstrate that it
has standing at summary judgment so long as its complaint contains
sufficient standing allegations. Each of these arguments fails.

First, Plaintiffs' suggestion (at 30-31) that the venue-creating
plaintiff need not have standing is wrong. The overwhelming weight of
authority indicates that a plaintiff without standing cannot create
venue. *See Miller v. Albright*, 523 U.S. 420, 426-27 (1998); Opening Br.
38-39. Courts routinely dismiss or transfer cases when the venue-
creating plaintiff fails to show standing. *E.g.*, *Missouri v. U.S. Dep't of*

*Educ.*, No. 2:24-cv-103, 2024 WL 4374124, at *4 (S.D. Ga. Oct. 2, 2024); *Dayton Area Chamber of Com. v. Becerra*, No. 3:23-cv-156, 2024 WL 3741510, at *8 (S.D. Ohio Aug. 8, 2024). Plaintiffs ignore this caselaw.

Plaintiffs note (at 30) that "venue and standing are distinct." Nobody disagrees. The relevant question is whether a plaintiff without standing can create venue. Neither of the cases Plaintiffs cite has anything to say on that question. In *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168 (1939), the Supreme Court observed that standing is jurisdictional and venue is not. In *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 188 (5th Cir. 2023), this Court briefly noted that one petitioner resided in the Circuit and another had standing. The case did not hold that the venue-creating petitioner lacked standing, nor did it consider whether the case could proceed if the venue-creating petitioner lacked standing.

Next, Plaintiffs are wrong (at 31) in arguing that venue is necessarily proper unless the venue-creating plaintiff was "improperly and collusively joined" or asserts a "frivolous" claim. While it is true that venue may be improper in those circumstances, it is also true that venue is improper if it is based on a plaintiff without standing.

16

Plaintiffs cite no authority that says these are the only circumstances under which venue is improper. In *Crane v. Napolitano*, 920 F. Supp. 2d 724, 747 (N.D. Tex. 2013), the court merely rejected the argument that the venue-creating plaintiff was improperly joined. It said nothing about what to do when the venue-creating plaintiff lacks standing. Moreover, the Longview Chamber's assertion to standing *is* frivolous: Plaintiffs concede that *Summers* requires an association to identify an injured member. The Longview Chamber made no attempt to comply with that rule.

Finally, Plaintiffs are wrong (at 31-32) in arguing that the Longview Chamber's standing should be assessed under the pleading standard. Standing must be proven with the "degree of evidence required at the successive stages of the litigation," meaning that at summary judgment a plaintiff "must set 'forth' by affidavit or other evidence 'specific facts'" showing standing. *Lujan*, 504 U.S. at 561. That the Longview Chamber's standing has a downstream effect on venue is no reason to discard that rule.

Plaintiffs' argument relies on a sleight of hand. They cite (at 31) a handful of cases that say venue is determined "at the outset of the

17

litigation." But *when* venue should be decided is a separate question from *how* (or under what standard) venue should be decided. And it is not the case that venue is always determined on the pleadings. Courts routinely look beyond the complaint in deciding venue and may resolve fact issues through evidentiary hearings. *See Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009). There is no reason a court must limit itself to the pleadings when assessing venue, much less when considering standing.

In any event, the Longview Chamber did not adequately plead standing. The sole sentence in the complaint specifically referencing the Longview Chamber contains only boilerplate about the association's purpose. ROA.15. While the complaint includes some conclusory statements about Plaintiffs' members generally, it does not include any standing allegations specific to the Longview Chamber. The absence of well-pleaded facts giving rise to a plausible inference of injury, causation and redressability is fatal to standing. *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009); *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1010 (7th Cir. 2021). Moreover, the complaint at most alleges that Plaintiffs "each have" members

18

regulated by the Bureau.  ROA.18.  It never states that each Plaintiff

has members that have incurred costs or been otherwise injured as a

result of the Manual Update.  So even if the Court credits Plaintiffs'

broad and conclusory standing allegations, those allegations in no way

support an inference that any member of the Longview Chamber has

suffered injury.

### C.    Plaintiffs Lack Standing to Seek the Injunction Issued by the District Court.

Finally, Plaintiffs lack standing to obtain the full scope of relief

granted by the district court.  For one, Plaintiffs make no serious effort

to defend their standing to seek an injunction barring future

supervisory or enforcement actions.  Nor could they: That claim is

unripe because no Plaintiff states an intention to engage in even

arguably discriminatory conduct or asserts that any action by the

Bureau is certainly impending.  Opening Br. at 39-40.  In a footnote (at

48 n.10), Plaintiffs suggest they do not need to make such a showing

because the injunction only becomes relevant "when the CFPB decides

to enforce its rule against a specific member."  But standing to seek an

injunction requires a "real and immediate threat of injury."  *City of Los

Angeles v. Lyons*, 461 U.S. 95, 103 (1983).  It is not enough that a party

may someday show standing *if* that party violates the law in the future and *if* the government pursues the violation. *Id.* at 102-03 (discussing *O'Shea v. Littleton*, 414 U.S. 488 (1974)).

Moreover, the injunction sweeps too broadly because it applies to Plaintiffs without standing. Opening Br. 41-42. Plaintiffs contend (at 47) that they all "have standing if one of them has standing." But their standing should not be considered as a "unified whole." *Murthy v. Missouri*, 144 S. Ct. 1972 (2024). Rather, Plaintiffs "must demonstrate standing for each claim that they press" and "for each form of relief that they seek." *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). For that reason, the rule that only one plaintiff needs standing does not apply when the plaintiffs seek "individualized relief." *M.M.V. v. Garland,* 1 F.4th 1100, 1110 (D.C. Cir. 2021). And individualized relief is precisely what the district court granted here. The court effectively granted each Plaintiff its own injunction barring the Bureau from taking certain actions against that Plaintiff's members. ROA.3109. That party-specific relief should not have been extended to any Plaintiff without standing.

## II.    If Plaintiffs Meet Threshold Justiciability Requirements, Then Vacatur on Procedural Grounds Would Be Appropriate.

The Bureau has chosen not to respond to Plaintiffs' APA arguments that it should have engaged in notice-and-comment rulemaking and that the updates were arbitrary and capricious.  Thus, if the Court concludes that Plaintiffs have overcome the obstacles to review on the merits of the Manual Update (but agrees with our position that Plaintiffs' lack standing to challenge hypothetical enforcement and supervisory actions), vacatur of the Manual Update on procedural grounds would be the appropriate remedy.[3]  In that circumstance, there would be no need to address the statutory authority question.  Vacatur would provide full relief, as Plaintiffs have attributed their alleged injuries to the Manual Update, ROA.24, 26. And this Court recognizes a "sound judicial practice of refusing to decide or address issues whose resolution is not necessary to dispose of a case, unless there are compelling reasons to do otherwise." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988).

---

[3] The Bureau's approach in no way bolsters the district court's flawed statutory authority holding.  *See Mayfield*, 117 F.4th at 617.

**III.    The Bureau Has the Statutory Authority to Treat Unfair and Discriminatory Acts and Practices as Unfair.**

The Bureau's opening brief established that the district court erred:  Discriminatory acts and practices are not facially excluded from the Bureau's statutory unfairness authority.  In other words, there is no unwritten exception to the statutory unfairness provision for discriminatory acts or practices.  Instead, the text and history of the CFPA demonstrate what common sense tells us—that discrimination can be unfair.  Opening Br. at 43-52.  And the major questions doctrine does not dictate otherwise, especially, for example, given the broad consensus about the (un)fairness of intentional race, sex, and religion discrimination.  *Id.* at 52-64.  Plaintiffs' contrary arguments fall flat.  This is unsurprising given that their position is Congress shielded discrimination from the Bureau's unfairness authority, without actually saying so.

Let's start where statutory interpretation is supposed to begin—the text of the statute.  In the CFPA, Congress provided that the Bureau can declare an act or practice unfair if it satisfies three criteria: 1) "the act or practice causes or is likely to cause substantial injury to consumers"; 2) the injury is not "reasonably avoidable by consumers";

22

and 3) the "injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(a), (b). Basic logic dictates that discriminatory acts or practices can satisfy this definition of unfairness. *See* Opening Br. at 43-45. And Plaintiffs must agree, because they *do not dispute* this point. *See* Opp. 35-39.

The definition of "unfairness" is not the only important piece of text left unaddressed by Plaintiffs. They also say nary a word about the Congress direction that when "determining whether an act or practice is unfair, the Bureau may consider established public policies . . ." 12 U.S.C. § 5531(c)(2). But, then again, what could they say: "[I]t is difficult to identify a public policy more established than that against discrimination." Jeff Sovern, *Is Discrimination Unfair*? U of Maryland Legal Studies Research Paper No. 2024-02, Georgia St. Law Rev.(forthcoming 2024), at 36 (May 27, 2024 draft).[4]  Indeed, Congress has expressed its disapproval of many forms of discrimination, including in consumer transactions, by outlawing them. *See* Opening Br. at 46-47 (collecting statutes). Thus, this text too supports the Bureau.

---

[4] https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4712271.

23

While Plaintiffs cede these two important textual points, they try to score some points of their own with the text and structure of the CFPA.  But, in the end, Plaintiffs' arguments constitute a doomed effort to locate a mousehole (unrelated statutory provisions) in which to hide their elephant (an unwritten, discrimination-only exception to unfairness).  Echoing the district court, *see* ROA.3100, Plaintiffs contend that "Congress expressly articulated 'unfair' acts and 'discrimination' as two distinct concepts" insofar as it authorized the Bureau to protect consumers "from unfair, deceptive or abusive acts and practices *and* from discrimination," Opp. at 35-36 (citing 12 U.S.C. § 5511(b)). The problem with this argument is that distinct does not mean mutually exclusive, and this argument depends on the conclusion that discrimination cannot be unfair.  *See* Opening Br. at 50-51. Plaintiffs offer no support for the proposition that the word "and" in the statute indicates that the item that follows (discrimination) is mutually exclusive from the ones that precede it (including unfairness).  Indeed, courts have recognized that the other distinct concepts in the statute overlap, namely, the distinct prohibitions in § 5511 (and § 5531) on unfair conduct and deceptive conduct.  *See, e.g., FTC v. Wyndham*

*Worldwide Corp.*, 799 F.3d 236, 245 (3d Cir. 2015) (collecting cases).

And, as explained above and below, the other interpretative clues

demonstrate that unfairness and discrimination aren't mutually

exclusive.

Plaintiffs' two arguments from the structure of the CFPA fare no

better.  Plaintiffs argue that "[i]n §1002(13) of the Act, Congress defined

'fair lending' as 'fair, equitable, and nondiscriminatory access to credit

for consumers'" and "[i]f Congress's use of 'fair' included

'nondiscriminatory,' it wouldn't have needed to include

nondiscriminatory in its definition."  Opp. at 36 (citing 12 U.S.C.

§ 5481(13)).  It is a mystery why Plaintiffs think this provision helps

them, since what it clearly shows is that Congress viewed

discriminatory lending as something other than "fair" lending.  (Unfair

lending, one might call it.)  And if Plaintiffs' argument were true, it

would also mean that the concept of equity does not comprise fairness

because Congress included the term "equitable" separately from "fair"

in defining "fair lending." But the word "equitable" naturally includes

the concept of fairness, *see* Oxford English Dictionary, *available at*

https://www.oed.com/view/Entry/63831 (defining "equitable" as

"[c]haracterized by equity or fairness"). Congress, then, can be redundant—and was in § 5481—and one cannot deduce from the inclusion of the term "nondiscriminatory" in the definition of "fair lending" that the concept of discrimination would otherwise be outside the ambit of fairness concerns. *See Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) (explaining that Congress can be redundant). Plaintiffs make a similar argument about the provision establishing the Bureau's Office of Fair Lending and Equal Opportunity, Opp. at 37, but it fails for the same reason.

Plaintiffs' last salvo (at 37-38) before turning to the major questions doctrine is that this statute doesn't read like most anti-discrimination statutes (because, e.g., it doesn't list protected classes) and that statutes like it have not been read to include discrimination. These assertions miss the mark.

Plaintiffs' this-one-is-not-like-the-other-ones argument is a red herring for the simple reason that the unfairness provision is not an anti-discrimination statute simpliciter. It's a prohibition on *unfairness* that can capture discriminatory acts and practices *if* they satisfy the statutory definition of unfairness. 12 U.S.C. § 5531(c). Congress, of

26

course, can tackle the problem posed by discriminatory acts and practices in different ways (including by policing them to the extent they are unfair under § 5531(c)); nothing requires that it use a specific verbal formula to do so. *Cf. Stowell v. Sec'y of Health & Hum. Servs.*, 3 F.3d 539, 542 (1st Cir. 1993) ("It is a natural corollary of this truism that Congress, in its wisdom, may choose to express the same idea in many different ways.").  And that the unfairness provision may capture discriminatory acts or practices without reading like a traditional anti-discrimination statute is unsurprising given the nature of the provision: Congress has declined to "enumerat[e] the particular practices to which [unfairness] was intended to apply," *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 240 (1972), because there are "too many unfair practices to define, and after writing 20 of them into the law it would be quite possible to invent others," S. Rep. No. 63-597, at 13 (1914).

As for Plaintiffs' historical argument, it's simply wrong.  As the Bureau noted in its opening brief, there is a long history of treating discriminatory conduct as unfair.  The Federal Trade Commission (FTC) made clear decades ago that discriminatory acts and practices can be unfair under the FTC Act.  Opening Br. at 47-48.  The Federal

Reserve Board and the Federal Deposit Insurance Corporation reached the same conclusion (in 2004).  *Id.* at 48-49.  And DOT has arrived at the same conclusion about the meaning of an analogous unfairness provision.  *Id.* at 48.  The Bureau has never said otherwise.  Pushing back, Plaintiffs seem to argue that the unfairness provisions in these other statutes specify protected classes, Opp. at 37, but that's false: These related unfairness provisions do not list protected classes.  *See* 15 U.S.C. § 45(a) (FTC Act); 49 U.S.C. § 41712(a) (DOT unfairness provision).  History, then, supports the Bureau's interpretation.

Plaintiffs—like the district court, ROA.3098-3100—turn to the major questions doctrine to try to shore up the faulty assertion that discrimination is facially excluded from the Bureau's statutory authority to police unfair acts and practices.  Opp. at 39-43.  Their arguments are unpersuasive.  To start, Plaintiffs maintain (at 39) that "[t]he expansion of disparate-impact liability throughout the financial-services industry presents a major question."  Plaintiffs are focused on the wrong question.  The issue is not whether there is some hypothetical application of unfairness to discriminatory conduct that would be outside of the Bureau's authority because the major question

28

standard could not be met.  Rather, to support the district court's
determination that discriminatory conduct is facially excluded from
unfairness (under § 5531), Plaintiffs would have to show that applying
§ 5531 to a discriminatory act or practice would always exceed the
Bureau's statutory authority.  *See, e.g., Reno v. Flores*, 507 U.S. 292,
301 (1993) (stating that a facial challenge to rule as lacking statutory
authority can succeed only if there is no valid application of the rule);
*see also Mayfield*, 117 F.4th at 617 (upholding agency's minimum salary
rule, in the face of a major questions doctrine challenge, even though
there be may some "particular minimum-salary rule [that] could raise
issues because of its size").  They cannot make that showing.  As we
explained in our opening brief, there are numerous examples of
discrimination—such as intentional race, sex, or religious
discrimination—that could qualify as unfair under § 5531 consistent
with the major questions doctrine.  Opening Br. at 55-56, 60-61.

As a fallback to their one-bad-apple argument, Plaintiffs claim (at
42) that treating *any* kind of discriminatory conduct as unfair presents
a major question.  They argue that if the unfairness provision applies to
any type of discriminatory conduct, then "[t]hat, too, would have major

ramifications for the financial-services industry and States' power to regulate discrimination." Opp. at 42. This argument fails because, as Bureau has explained, there are no issues of sufficient economic or political significance to warrant major questions doctrine treatment for every assertion of unfairness authority over discrimination. To put a finer point on it, the country is not roiled with debates about whether intentional race or religious discrimination should be allowed, nor would banks be bankrupted by telling their employees not to engage in such intentional discrimination. Opening Br. at 56-63. Moreover, *Mayfield* bolsters this analysis by making clear that cases involving claims of only "millions" in economic expenditures, such as this one, Opp. at 42, do not warrant major questions doctrine treatment based on economic significance. *Mayfield*, 117 F.4th at 616.

Finally, Plaintiffs argue (at 41-42) that the Bureau forfeited the "*Reno* argument," i.e., the argument that discrimination is not categorically excluded from its unfairness authority just because some hypothetical application of unfairness to discrimination may trigger (and fail to satisfy) the major questions doctrine. Plaintiffs are wrong. The Bureau's *Reno* argument, which fits comfortably with this Court's

30

recent *Mayfield* opinion, is a response to the district court's decision.
*See* ROA 3097-3101. And this Court has made clear that, while "[t]he
appellant may not, of course, raise an issue which was not considered by
the court below[,] there is no rule which forbids [it] from urging that the
grounds given by the district court for [its decision] are wrong." *Walker
v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 276 n.1 (5th Cir. 1990); *see also,
e.g., Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 82 F.4th 337, 341
(5th Cir. 2023).[5] That's just what the Bureau's argument does—
explains why the district court's decision is wrong—and this Court "may
hear [it] out." *Landor*, 82 F.4th at 341.

## IV.  If Any Relief Were Appropriate, Vacatur Would Suffice, and, in Any Case, the Injunctive and Declaratory Relief Are Overbroad.

The Bureau explained in its opening brief that: (i) if any remedy
were warranted, vacatur of the Manual Update would suffice—no
injunction would be appropriate; (ii) even if injunctive relief were
appropriate, the Court erred by extending that relief to future

---

[5] It's worth noting that Plaintiffs raised the major questions doctrine
argument in a single sentence in their opening summary judgment brief
and in a single paragraph in a combined opposition and reply brief.  *See*
ROA.201, 1781-82.  The Bureau responded to those barebones
arguments in the district court.  ROA.1821-1822.

association members (i.e., current nonmembers); and (iii) the district court issued overly broad declaratory relief. Opening Br. at 65-68.

Plaintiffs challenge all of these points, but their arguments can be dispatched briefly. There is nothing to Plaintiffs' argument (at 45) that vacatur of the March 2022 updates would offer no benefit to Plaintiffs because the Bureau's statutory authority would remain. If the Court credits Plaintiffs' view that the Manual Update imposed real obligations on their members (as opposed to on examiners), then vacatur is useful because it eliminates those obligations. *Id.* at 6 (listing "require[ments]").

Plaintiffs also contend (at 46) that the injunction is warranted, notwithstanding the availability of vacatur, *see Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 160-66 (2010), because the injunction provides an added benefit by preventing the Bureau from "circumvent[ing]" the vacatur decision by relying on its statutory authority. But there is no evidence that the Bureau intended to reissue the Manual Update. *See New York v. Wolf*, No. 20-CV-1127, 2021 WL 185190, at *2 (S.D.N.Y. Jan. 19, 2021) (declining to issue injunction with vacatur and pointing out that exigency, missing here, is a key

element in such injunctions).  And, as discussed earlier, Plaintiffs don't have standing to obtain injunctive relief that applies to speculative future supervisory and enforcement actions.

Plaintiffs' arguments regarding the extension of the injunction to future members similarly lack merit.  They contend (at 47) that the Bureau cites no case reversing an injunction on the ground that it applies to future members.  But courts have questioned the application of injunctions to future members, *Association of American Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 541 (6th Cir. 2021), and one need not look beyond basic standing and remedial principles to find support for limiting injunctions to current association members, Opening Br. at 66-67.  Nor does *Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925), support their argument, as the future-member issue was not presented, *see United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952).

As for declaratory relief, the Bureau's position in its opening brief holds:  The district court issued an overbroad declaration.  Opening Br. at 67-68.

## **CONCLUSION**

The Court should reverse the district court's judgment.


Dated: November 12, 2024        Respectfully submitted,

> Seth Frotman
>    *General Counsel*
> Steven Y. Bressler
>    *Deputy General Counsel*
> Christopher Deal
>    *Assistant General*
>    *Counsel*
>
>   s/ *Justin M. Sandberg*
> Justin M. Sandberg
> Ryan Cooper
>    *Senior Counsel*
> Consumer Financial Protection
> Bureau
> 1700 G Street NW
> Washington, DC 20552
> Justin.Sandberg@cfpb.gov
> Ryan.Cooper@cfpb.gov
> (202) 450-8786 (Sandberg)
> (202) 702-7541 (Cooper)

## CERTIFICATE OF SERVICE

I hereby certify on this 12th Day of November, 2024, a true and correct copy of this document was served electronically by the Court's CM/ECF system to all counsel of record who have identified email as their preferred method of service.

*/s/ Justin M. Sandberg*
Justin M. Sandberg

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 6,416 words. The motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Office 365 Pro Plus in Century 14-point font, a proportionally spaced typeface.

*/s/ Justin M. Sandberg*
Justin M. Sandberg